IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ROGER LITTLE,

          Plaintiff,

v.                              CIVIL ACTION NO. 3:20-0684

PRIMECARE MEDICAL OF WEST VIRGINIA, INC.;
PRIMECARE MEDICAL, INC.;
JEREMY FULLER, M.D. sued in his individual capacity;
BRENNA ADKINS, LPN, sued in her individual capacity;
REGINA BRYANT, LPN, sued in her individual capacity;
SUISE CHRISTIAN, LPN, sued in her individual capacity;
SHANNAN DILLON, LPN, sued in her individual capacity;
ROB FARROW, LPN, sued in his individual capacity;
SHANDRA FRAZURE, LPN, sued in her individual capacity;
KELLI MANKIN, RN, sued in her individual capacity;
LORI MCCLURE, LPN, sued in her individual capacity;
APRIL MORALES, RN, sued in her individual capacity;
NIKKI PORTER, LPN, sued in her individual capacity;
JESSICA RAMEY, LPN, sued in her individual capacity;
KENDRA RICHARDSON, LPN, sued in her individual capacity;
MONICA THORNBURG, LPN, sued in her individual capacity;
CATHY VOILES, LPN, sued in her individual capacity;
STEVEN YOUNG, LPN, sued in his individual capacity;
WEST VIRGINIA DIVISION OF CORRECTIONS AND
REHABILITATION;
CARL ALDRIDGE, sued in his individual capacity; and
DOES 1-10, sued in their individual capacities;

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court are two motions to dismiss. The first motion is filed by Defendant Carl Aldridge and seeks dismissal of the First Amended Complaint as applied to him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF. No. 35. The second

motion is filed by Defendant West Virginia Division of Corrections and Rehabilitation ("DCR") and seeks dismissal of the First Amended Complaint as applied to it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 39. For the reasons set forth below, the Court **GRANTS** both motions.

## I. BACKGROUND

In his First Amended Complaint, Plaintiff Roger Little alleges deliberate indifference to his health and safety, including deprival of effective medical treatment, while a pretrial detainee at the Western Regional Jail ("WRJ") in Barboursville, West Virginia. Plaintiff asserts that he was denied due process in violation of the Fourteenth Amendment of the United States Constitution when he received objectively unreasonable medical care or those responsible for his care were deliberately indifferent to a serious medical need.

On October 15, 2018, Plaintiff, a diabetic, alleges that he experienced a delusional episode while driving eastbound on Interstate 64 and began driving erratically. First Am. Compl. at ¶ 26, ECF No. 27. He was erroneously charged with DUI and transported to the WRJ, where he was held for approximately one week. *Id*. at ¶¶ 26-27. During his arrest, he sustained serious abrasions to his feet which became infected. *Id.* at ¶ 26. Plaintiff was examined by medical staff following his arrival, who were aware of his diabetes; the staff then provided medical care consisting of cleaning and bandaging of his wounds. *Id.* at ¶ 28. Thirty-six hours later, a physician examined Plaintiff's feet and noticed they were still bleeding. *Id.* at ¶ 29. The physician then ordered x-rays and directed nursing staff to soak Plaintiff's feet and dress them. *Id*. Despite the medical providers' knowledge that Plaintiff was diabetic, there was no further

medical treatment beyond periodic soaking and dressing over the next two days, after the bleeding from Plaintiff's feet had stopped. *Id*. at ¶ 29-30.

Two days later, on October 19, 2018, Plaintiff was discovered naked in his cell, shouting unintelligibly and not responding to instructions, but was not treated further, placed under medical observation, or taken to the hospital. *Id*. at ¶ 30. For the next two days, staff allegedly disregarded Plaintiff's medical needs, despite continued erratic behavior. *Id*. at ¶ 31. Two days after this episode, Plaintiff was finally examined by another physician who ordered transportation to the hospital. *Id*. at ¶¶ 32-34. The hospital staff had to amputate Plaintiff's septic, gangrenous legs below the knee four days after Plaintiff's hospital admission. *Id*. at ¶ 35.

On October 15, 2020, Plaintiff instituted this action. ECF No. 1. Plaintiff named twenty defendants in his Amended Complaint: PrimeCare, many doctors and nurses in their individual capacity, the West Virginia Department of Corrections and Rehabilitation ("WVDCR"), PrimeCare, and Carl Aldridge, the superintendent of Western Regional Jail in his individual capacity. First Am. Compl. 2-5, ECF No. 27. He also "named" several John and Jane Doe defendants, allegedly employees of PrimeCare, the WVDCR, and PSIMed. *Id.* at 5. At core, Plaintiff's arguments stem from Defendants' alleged failure to provide Little with necessary medical care. On February 3, 2021, Defendant Carl Aldridge filed a motion to dismiss claiming that Little failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") and claiming qualified immunity. ECF No. 34-35. On February 12, 2021, Defendant WVDCR filed a Motion to Dismiss and accompanying Memorandum of Law claiming qualified immunity. ECF No. 39, 40. On March 8, 2021, Plaintiff filed a Response in Opposition in which Plaintiff noted that, "[i]n light of the controlling law, [Plaintiff] does not oppose the DCR's

motion to dismiss with prejudice….” Plaintiff's Reply at 2, ECF No. 45. Accordingly, the rest of this order will only focus on Defendant Aldridge's claims.

## II. STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III. DISCUSSION

(A) <u>The Exhaustion Requirement under the PLRA</u>

Defendant Aldridge filed a Motion to Dismiss and accompanying Memorandum of Law in which, Defendant Aldridge claimed that Plaintiff failed to exhaust administrative remedies as required by the PLRA. ECF Nos. 34-35. On February 17, 2021, Plaintiff filed a Response in Opposition claiming that the PLRA was inapplicable to his case, as he was not a prisoner at the time of filing. ECF No. 41. Defendant's Reply on February 24, 2021 did not address this argument. ECF No. 43.

The PLRA contains an administrative exhaustion requirement that applies to any challenge to prison conditions under federal law, including section 1983 actions, brought "by a

prisoner confined in any jail, prison, or correctional facility." 42 U.S.C. § 1997e(a). A prisoner is defined as "any person incarcerated or detained in any facility." *Id*. § 1997e(h). However, Plaintiff was no longer an inmate at the time he filed this action. Therefore, the PLRA exhaustion requirement is not applicable. *See Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007) ("A former inmate who has been released is no longer 'incarcerated or detained' for the purposes of § 1997e(h) and therefore does not qualify as a 'prisoner' subject to the PLRA."); *Cantley v. W. Va. Reg. Jail & Correctional Facility Auth.*, 728 F.Supp.2d 803, 820 (S.D. W.Va. 2010) (same; citing *Cofield*).

(B) Qualified Immunity

Little alleges that the denial of medical care violated the Fourteenth Amendment Due Process Clause. Challenges to conditions of confinement by pretrial detainees are governed by the Fourteenth Amendment. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (*citing Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Accordingly, Mr. Little "can make out a violation at least where 'he shows deliberate indifference to serious medical needs under cases interpreting the Eighth Amendment.'" *Mays*, 992 F.3d at 300, (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

To set forth a prima facie case under the Eighth Amendment, "'a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Salmons v. W. Reg'l Jail Auth.*, No. 3:18-1447, 2019 WL 5616916, at *5 (S.D. W. Va. Oct. 30, 2019) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotations omitted)). The deliberate indifference standard

contains both objective and subjective elements. *See Farmer v. Brennan*, 511 U.S. 825 (1994). Objectively, a plaintiff must show he or she had a "serious" medical need—one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted). The plaintiff must also show the denial of medical care caused "a serious or significant physical or emotional injury" or "a substantial risk of such serious harm." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation omitted).

The subjective element requires the plaintiff to show "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citations omitted). If the plaintiff establishes subjective knowledge, an official may avoid liability if he or she "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Defendant Aldridge asserts the defense of qualified immunity against Plaintiff's claims against him. Under qualified immunity, government officials performing discretionary functions are generally shielded from liability for civil damage if their behavior does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry is a two-step determination of "(1) whether the official violated a constitutional right; and if so (2) whether the

right was 'clearly established' at the time of its violation." *Rock for Fife–UMBC v. Hrabowski*, 411 F. App'x. 541, 547 (4th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)).

It was clearly established by the time of Little's detention that a "pretrial detainee ha[d] a right to be free from any form of punishment under the Due Process Clause of the Fourteenth amendment" which required government officials not to be deliberately indifferent to any serious medical needs of the detained. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (internal citations and quotations omitted). A finding of deliberate indifference requires both objectively serious medical condition and subjective knowledge by a prison official of both the "serious medical condition and the excessive risk posed by the official's action or inaction." *Id*. (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).

Therefore, the Court must consider whether the allegations plausibly satisfy both the objective and subjective elements to sufficiently allege a constitutional violation, which will necessarily decide the qualified immunity issue. *See Mays*, 992 F.3d at 302 ("Without allegations that plausibly satisfy both the objective and subjective elements, the [defendants] would have a right to dismissal based on qualified immunity" because "the qualified-immunity finding satisfies the constitutional violation standard as well.").

Courts should make a finding of qualified immunity as early as possible. "Because qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). The determination of whether a government official is entitled to qualified immunity is "purely [a] legal question." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

1. Civil Rights Claim

In Count One of the Amended Complaint, Plaintiff claimed that Defendant Aldridge violated his due process rights under the Fourteenth Amendment when "by his actions or inactions, Defendant Aldridge contributed to Plaintiff's injuries by causing him to be provided with objectively unreasonable medical treatment, or in the alternative, demonstrating deliberate indifference to his serious medical needs…." ECF No. 27 at ¶ 41.

Defendant Aldridge claims qualified immunity. ECF Nos. 34, 35. Defendant Aldridge asserts that he did not violate any constitutional right in fulfilling his discretionary duties of hiring, training, and supervising the employees of Western Regional Jail. *Id*. He also asserts that Plaintiff does not raise any factual allegations regarding specific actions or inactions taken by him which could be a proximate cause of Plaintiff's alleged injuries. *Id*. Plaintiff asserts that he is entitled to conduct limited discovery to aid in his identification of "acts or omissions of Aldridge" that injured him in order to establish the nexus between the constitutional violation and Aldridge's actions that can overcome qualified immunity. ECF No. 41. Defendant Aldridge replies that there are no facts in the Amended Complaint to suggest that he violated a constitutional right and that the facts alleged do not rise to the level of objective unlawfulness required to overcome qualified immunity, which should be decided at this stage. ECF No. 43.

As discussed above, to allege a violation of a constitutional right through a finding of deliberate indifference requires both objectively serious medical condition and subjective knowledge by a prison official of both the "serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Here, Plaintiff's allegations state that he has an objectively serious medical condition, that he is diabetic, which Defendants do not dispute. Despite the general sufficiency of the

allegations, the facts of Plaintiff's complaint do not support that Aldridge was aware of a serious risk to Little's safety and knowingly disregarded that risk. The only allegation Plaintiff makes specifically regarding Defendant Aldridge is that he contributed to Plaintiff's injuries "by causing him to be provided with objectively unreasonable medical treatment or, in the alternative demonstrating deliberate indifference to his serious medical needs." This general allegation is not enough to prove subjective knowledge because it does not impute any actual knowledge to Defendant Aldridge or allege facts suggesting that he had such knowledge of inadequate medical care from any source. *See Mays* 992 F.3d at 305 (finding sufficient allegations of subjective knowledge where individual officers saw that a pre-trial detainee had prescription pills in his truck and was reported to have consumed alcohol and narcotics, which showed they knew he had mixed medication and alcohol and was at risk from this); *Hammonds v. Wolfe*, No. 3:18-1377, 2021 WL 1792137 at *6 (S.D. W. Va. May 5, 2021) (finding a disputed question of fact on a claim of deliberate indifference where the former superintendent of the jail knew that the facility was overcrowded, read grievances on a daily basis, knew of occasions of flooding and there was other evidence of "widespread knowledge.")

The Court must "accept all well-pleaded allegations in the plaintiff's complaint as true" and "draw all reasonable inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, a factfinder could not conclude from these allegations that Defendant Aldridge was subjectively aware of a substantial risk of serious injury to Little, and in fact none of the allegations suggest this.

## 2. Negligence Claim

In Count Three, Plaintiff alleges that Defendant Aldridge owed Plaintiff legal duties to "contract with and retain only those employees and agents that would not engage in violations of

his constitutional rights; to train and instruct their employees and agents not to engage in such violations; and to supervise their employees and agents to the extent necessary to reasonably ensure that they would not engage in such violations." *Id*. at ¶ 51. In negligently hiring, contracting with, and retaining employees that violated his constitutional rights, negligently failing to train and instruct their employees, and negligently supervising them, Defendant Aldridge also allegedly breached his legal rights and proximately caused Plaintiff's injuries through this negligence. *Id.* at ¶ 52. Plaintiff seeks compensatory and punitive damages for these negligent acts. Aldridge argues that Plaintiff has failed to sufficiently plead his negligence claim, and that he shielded by qualified immunity in the alternative. The Court agrees with the latter argument, and so it need not consider the former.

As this Court has noted before, "[i]t is axiomatic that a claim for negligence is a question of state tort law." *See Jeffers v. W Va. Dep't of Corrections & Rehab.*, No. 3:18-1447, 2020 WL 521851, at *4 (S.D. W. Va. Jan. 20, 2020) (citing *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016)). Because of this, West Virginia qualified immunity standards govern the Court's analysis. *Bosley v. Lemmon*, 656 F. Supp. 2d 582, 590 (N.D.W. Va. Aug. 31, 2009). Under state law, "[a] public executive official who is acting within the scope of his authority. . . is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established law of which a reasonable official would have known." *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 755, Syl. Pt. 5 (W. Va. 2014) (quoting *State v. Chase Sec., Inc.*, 424 S.E.2d 591, Syl. (W. Va. 1992)). State law also does not provide immunity for acts that are "fraudulent, malicious, or otherwise oppressive." *Id.*

Allegations of simple negligence are not enough to overcome immunity. *See Matson v. Wagner*, 781 S.E.2d 936, 948 (W. Va. 2015) ("A public officer is entitled to qualified immunity

for discretionary acts even if committed negligently."). Further, the categories of training, supervision, and retention attributed to Defendant Aldridge fall within the category of "discretionary" government function. *W. Va. Regional Jail and Correctional Facility Auth v. A.B.*, 766 S.E. 2d 751, 772 (W. Va. 2014). With this immunity paradigm in mind, Aldridge cannot be held liable under a theory of simple negligence. With respect to Count Three, the Defendant's motion must be granted.

Accordingly, the Court **GRANTS** both Motions to Dismiss and **DISMISSES** Defendants WVDCR and Carl Aldridge from the Action.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: September 15, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE